THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| JOELLE TANNER,<br><br>Plaintiff,<br><br>v.<br><br>OFFICER NOLAN JENKINS, and JOHN DOES 1–5,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [80] DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Case No. 2:22-cv-00474-DBB-JCB<br><br>District Judge David Barlow |

Before the court is Defendant Officer Nolan Jenkins' Motion to Dismiss.[1] After the court dismissed Plaintiff Joelle Tanner's claims for the second time,[2] she filed her Second Amended Complaint on March 5, 2025.[3] The Second Amended Complaint asserts claims under 42 U.S.C. § 1983 that her constitutional rights were violated when she was arrested, detained, and prosecuted for felony domestic violence.[4] Officer Jenkins counters that he is entitled to qualified immunity. Having reviewed the briefing and the case law, the court determines that oral argument is not necessary.[5]

---

[1] Mot. to Dismiss Second Am. Compl., ECF No. 80, filed April 17, 2025.

[2] Memorandum Decision & Order, ECF No. 66, filed June 17, 2024.

[3] Second Am. Compl., ECF No. 77, filed March 5, 2025; *see also* Dkt. Text Order, ECF No. 76, filed March 3, 2025 (granting leave to file a Second Am. Compl.).

[4] Second Am. Compl. ¶ 138–162.

[5] *See* DUCivR 7-1(g).

## BACKGROUND[6]

This case centers on a Lehi City police officer's decision to arrest Plaintiff Joelle Tanner and cite her for felony domestic violence. Joelle and Justin Tanner were married in 2020.[7] During the Tanners' first year of marriage, Lehi City Police were called at least three times on allegations of domestic violence.[8]

On August 10, 2020, Ms. Tanner notified Lehi police that Mr. Tanner choked her and repeatedly threw her on the ground.[9] Upon being questioned, Mr. Tanner admitted the allegations.[10] Ms. Tanner was transported from her home to the local hospital where she was diagnosed with a fractured pelvis.[11] Lehi Officer Marten Thomas accompanied Ms. Tanner to the hospital in the ambulance.[12]

Officer Thomas made Ms. Tanner feel uncomfortable when he rubbed his hands on hers and turned off his body camera when no nurses were present.[13] Following being discharged from the hospital, Officer Thomas "visited [Ms. Tanner] at her home socially" on two separate occasions.[14] Ms. Tanner called the Lehi City Police Department soon after and asked that Officer Thomas stop visiting her at her home.[15] The Police Chief was very defensive of Officer Thomas.[16] Officer Thomas visited Ms. Tanner one additional time after she complained.[17]

---

[6] Because the court is deciding a motion to dismiss, the following factual allegations taken from Ms. Tanner's Second Amended Complaint are treated as true.
[7] Second Am. Compl. ¶ 12.
[8] *Id.* ¶¶ 13–14, 43, 52.
[9] *Id.* ¶¶ 16–17.
[10] *Id.* ¶ 18.
[11] *Id.* ¶ 24.
[12] *Id.* ¶ 24.
[13] *Id.* ¶¶ 26–27.
[14] *Id.* ¶ 28.
[15] *Id.* ¶ 31.
[16] *Id.* ¶ 32.
[17] *Id.* ¶ 34.

Mr. Tanner moved back in with Ms. Tanner in November 2020.[18] Ms. Tanner declined to testify against Mr. Tanner and his charges were dismissed.[19]

On December 28, 2020, the officer at issue in this case, Officer Jenkins, and two other officers responded to another incident at the Tanner residence.[20] Common practice and protocol is that when responding to domestic violence situations, police officers review materials from prior visits to the same residence.[21] Officer Jenkins knew of Mr. Tanner's prior conduct.[22] When the officers arrived on the scene, both Mr. Tanner and Ms. Tanner were uncooperative and no action was taken.[23]

On February 18, 2021, Lehi City Police were called again to respond to a domestic violence situation.[24] Unlike the prior incident, Officer Jenkins was not present. Mr. Tanner claimed that the couple was only having a verbal disagreement and no physical abuse occurred.[25] Ms. Tanner told the officers that he had been physically aggressive and had punched a hole in the wall.[26] She also told the officers that she feared that Mr. Tanner would become violent that night or the next day and asked that they take action.[27] No action was taken.[28]

The next day, on February 19, 2021, Lehi City Police were called again to the Tanner residence.[29] Ms. Tanner asked her daughter to call 911 because she feared things were escalating

---

[18] *Id.* ¶ 40.
[19] *Id.* ¶¶ 38–39.
[20] *Id.* ¶ 43.
[21] *Id.* ¶ 45.
[22] *Id.* ¶¶ 46–47.
[23] *Id.* ¶ 51.
[24] *Id.* ¶ 52.
[25] *Id.* ¶ 56.
[26] *Id.* ¶ 57.
[27] *Id.* ¶ 59.
[28] *Id.* ¶ 60.
[29] *Id.* ¶ 61.

into physical violence.[30] Ms. Tanner then called 911 shortly thereafter to report that Mr. Tanner

had punched her in her side.[31] Dispatch advised Officer Jenkins and another officer that was on

the scene the night prior that there likely was physical violence and that firearms were reportedly

involved.[32]

Upon arriving, Officer Jenkins talked to Mr. Tanner, who claimed that he was the

victim.[33] Mr. Tanner claimed that Ms. Tanner hit Mr. Tanner in the back and tried to push him

down the stairs in the presence of her daughter.[34] Officer Jenkins observed Mr. Tanner's back

and did not see any marks.[35]

Officer Jenkins then talked to Ms. Tanner, who claimed that the facts were the reverse of

Mr. Tanner's version: He hit her in the back and tried to push her down the stairs.[36] Ms. Tanner

stated that Mr. Tanner was no longer taking his medication for depression, anxiety, and ADD

and was acting "crazy."[37] Ms. Tanner's daughter stated that Mr. Tanner "looked like he was

about to push [Ms. Tanner] down the stairs."[38] Ms. Tanner told Officer Jenkins that Mr. Tanner

succeeded in throwing her down on a pile of guns.[39] Officer Jenkins asked her whether she had

any bruises on her, but did not check her for any marks.[40] Ms. Tanner had marks on her back.[41]

---

[30] *Id.* ¶ 62.
[31] *Id.* ¶ 63.
[32] *Id.* ¶ 66.
[33] *Id.* ¶ 74.
[34] *Id.* ¶ 74.
[35] *Id.* ¶ 76.
[36] *Id.* ¶¶ 80–81.
[37] *Id.* ¶¶ 77–79.
[38] *Id.* ¶ 71.
[39] *Id.* ¶ 81.
[40] *Id.* ¶¶ 83, 85.
[41] *Id.* ¶ 86.

Officer Jenkins then asked Mr. Tanner whether he punched Ms. Tanner in the back.[42] Mr. Tanner responded that he "never in a million years" would hit her.[43] Officer Jenkins reviewed an "audio recording of the night" Mr. Tanner had made.[44] The Second Amended Complaint describes the audio as allegedly showing that Ms. Tanner was "verbally aggressive."[45]

Generally, the audio recording shows Ms. Tanner and Mr. Tanner in a heated argument for about 4 minutes before they separate waiting for the police to arrive.[46] At the relevant part, Mr. Tanner exclaims "Joelle, you're really going to push me down the stairs?!"[47] Ms. Tanner responds "No, I'm going down the stairs myself, move out of the [expletive] way! Move out of the way! Move!"[48] On the basis of the audio, Officer Jenkins arrested Ms. Tanner for Domestic Violence Assault, a class B misdemeanor, and Felony Domestic Violence in the Presence of a Child.[49]

Ms. Tanner asked Officer Jenkins if he would ensure that her daughters would be safe with Mr. Tanner given that he was not taking his medication and had access to several guns.[50] Officer Jenkins declined.[51] Ms. Tanner further alleges that another officer on the scene, Officer Rudolph, was surprised by Officer Jenkins' decision to arrest Ms. Tanner and a heated conversation regarding the matter occurred.[52] Officer Rudolph took Ms. Tanner to the hospital

---

[42] *Id.* ¶ 88.
[43] *Id.* ¶ 89.
[44] *Id.* ¶ 91.
[45] *Id.* ¶ 91.
[46] Mot. to Dismiss, ECF No. 12, Ex. 2 ("Audio Recording") at 00:00–4:17.
[47] *Id* at 1:53–1:55.
[48] *Id.* at 1:55–2:05.
[49] Second Am. Compl. ¶¶ 90–91.
[50] *Id.* ¶ 93.
[51] *Id.* ¶ 94.
[52] *Id.* ¶¶ 98, 100–01.

for evaluation and imaging "came back clean for fractures or internal abnormalities."[53] The Second Amended Complaint does not allege that any bruises or other injuries were discovered at the hospital.[54]

Ms. Tanner spent hours in jail and had to post bail to be released due to the felony charge.[55] The felony charge delayed and complicated her ability to obtain a protective order against Mr. Tanner.[56] Further, the criminal charges precluded Ms. Tanner from returning to her home after posting bond, forcing her to rent an apartment.[57] Ms. Tanner alleges that Officer Jenkins overcharged Joelle with a felony so that she would face these consequences in retaliation for her earlier complaints.[58]

Lehi City brought misdemeanor domestic violence charges against Ms. Tanner, but not a felony charge.[59] It ultimately dismissed the charges.[60] Later, when submitting to a domestic violence evaluation, Joelle was told by an unidentified person that "Lehi City has repeatedly arrested and charged the victims of domestic violence in cases of ongoing domestic disputes."[61]

On May 20, 2022, Ms. Tanner filed her case in Utah state court.[62] Defendants removed the action to federal court shortly thereafter and later filed a motion to dismiss.[63] The court held a

---

[53] *Id.* ¶¶ 99, 102.
[54] *See Id* ¶ 102.
[55] *Id.* ¶ 108–09.
[56] *Id.* ¶ 110.
[57] *Id.* ¶¶ 113–14.
[58] *Id.* ¶ 111.
[59] *Id.* ¶¶ 119, 121.
[60] *Id.* ¶ 122.
[61] *Id.* ¶ 125.
[62] Notice of Removal ¶ 1, ECF No. 2, filed July 19, 2022.
[63] Notice of Removal ¶ 2.

hearing on Defendants' First Motion to Dismiss, which it granted.[64] Ms. Tanner then filed an Amended Complaint with many new allegations, which was similarly dismissed.[65]

After receiving leave from the court, Ms. Tanner filed the Second Amended Complaint at issue here.[66] It contains nearly identical factual allegations but removes Lehi City as a defendant and adds additional case law regarding the clearly established law at the time of the arrest.[67] It asserts (1) a First Amendment retaliation claim; (2) a Fourteenth Amendment malicious prosecution claim; and (3) an abuse of process claim.[68] Defendant again moved to dismiss.[69]

## STANDARD

"[F]or the purposes of resolving a Rule 12(b)(6) motion, [the court accepts] as true all well-pleaded factual allegations in a complaint and view[s] these allegations in the light most favorable to the plaintiff."[70] "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[71]

## DISCUSSION

The court first addresses the parties' dispute concerning the audio recording[72] referenced in the complaint. Then, the court considers whether Officer Jenkins has qualified immunity for each of the three claims against him.

---

[64] Minute Entry, ECF No. 28, entered March 2, 2023.

[65] Memorandum Decision & Order, ECF No. 66, filed June 17, 2024.

[66] Second Am. Compl.; Dkt. Text Order, ECF No. 76.

[67] *See* Second Am. Compl. ¶¶ 126–37.

[68] *Id*. ¶¶ 138–62.

[69] Motion to Dismiss, ECF No. 80, filed April 17, 2025.

[70] *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (*citing Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006)).

[71] *Sutton v. Utah State Sch. For Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

[72] The recording in question is actually a video with sound. However, the video portion shows nothing discernible, making only the audio pertinent.

I.      **Evidence Outside the Pleadings**

As a threshold matter, the parties dispute whether the audio recording can be considered. Generally, evidence outside the pleadings is not considered at this stage, but there is an exception for "documents incorporated by reference into the complaint."[73] These can be considered "if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[74] This can include video and audio recordings.[75]

Here, the audio recording's authenticity is not in dispute, is incorporated in the complaint, and is central to the Plaintiff's claims. First, Plaintiff does not dispute the recording's authenticity, only arguing that it should not be considered at this stage. Second, it is incorporated into the complaint by reference and description. The complaint alleges that Officer Jenkins "made the arrest based" on the audio recording.[76] The complaint also describes the recording's contents as "allegedly show[ing] [Ms. Tanner] was verbally aggressive."[77] Third, the recording is central to Ms. Tanner's claim that Officer Jenkins did not have probable cause because the recording is the alleged basis for the arrest. Therefore, the court considers the audio recording together with the well-pled fact allegations in the Second Amended Complaint.

---

[73] *Slater v. A.G. Edwards & Sons*, 719 F.3d 1190, 1196 (10th Cir. 2013).

[74] *Waller v. Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019).

[75] *See, e.g., Montoya v. Vigil*, 898 F.3d 1056, 1060 n.2 (10th Cir. 2018) (considering an interrogation video attached to the complaint in connection with a motion to dismiss); *Wright v. City of Ponca City*, No. 22-6137, 2023 WL 5765848, at *1 n.2 (10th Cir. Sept. 7, 2023) (considering a police bodycam video); *Est. of Harmon v. Salt Lake City*, No. 20-4085, 2021 WL 5232248, at *2 (10th Cir. Nov. 10, 2021) ("[W]e may consider the body-cam videos and still frame excerpts because they were referred to in the complaint and neither party disputes their authenticity."); *Hoskins v. Withers*, No. 2:20-CV-749, 2022 WL 3576276, at *3 (D. Utah Aug. 18, 2022) (a court "may consider documents referred to in the complaint . . . . This can include videos."); *Hardman v. Roosevelt City*, No. 2:18-CV-00785-DBP, 2019 WL 2578586, at *3 n.4 (D. Utah June 24, 2019) ("In evaluating a motion to dismiss, the Court is entitled to consider the recording, since the interrogation is referenced in [the plaintiff's] proposed amended complaint and is central to his claims").

[76] Second Am. Compl. ¶ 91.

[77] *Id.*

## II.    Qualified Immunity

Officer Jenkins raises a qualified immunity defense. To overcome a qualified-immunity defense, "the onus is on the plaintiff to demonstrate '(1) that the official violated statutory or constitutional rights, and (2) that the right was "clearly established" at the time of the challenged conduct.'"[78] If a plaintiff fails to establish either prong of the standard, the defendant prevails.[79] Since "[t]he qualified-immunity doctrine protects public employees from both liability and 'from the burdens of litigation' arising from the exercise of discretion[,]"[80] there is a "special interest in resolving the affirmative defense of qualified immunity 'at the earliest possible state of a litigation.'"[81]

"[T]he doctrine of qualified immunity shields officers from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[82] The Supreme Court instructs that "[i]t is not enough that a rule be suggested by then-existing precedent, the 'contours of the law must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"[83] In other words, the "[e]xisting law must have placed the constitutionality of the officer's conduct 'beyond debate.'"[84] Only government officials who are "plainly incompetent or . . . who knowingly violate the law" are not protected.[85]

---

[78] *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (*quoting Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).
[79] *A.M. v. Holmes*, 830 F.3d 1123, 1134–35 (10th Cir. 2016).
[80] *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019) (*quoting Allstate Sweeping, LLC v. Black*, 706 F.3d 1261, 1266 (10th Cir. 2013)).
[81] *Robbins v. Oklahoma*, 519 F.3d 1242, 1249–50 (10th Cir. 2008) (*quoting Anderson v. Creighton,* 483 U.S. 635, 646 n. 6 (1987)).
[82] *Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (*quoting Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).
[83] *Id.* (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)).
[84] *Wesby*, 538 U.S. at 63 (quoting *Ashcroft* 563 U.S. at 741).
[85] *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Therefore, Ms. Tanner must show that as of February 19, 2021, Officer Jenkins' alleged actions violated her clearly established rights under the law.[86] The court considers each of Ms. Tanner's claims in turn.

### A.    First Amendment Retaliation Claim

Ms. Tanner first asserts that Officer Jenkins arrested her in retaliation for exercising her First Amendment rights. Thus, Ms. Tanner must show that Officer Jenkins violated clearly established First Amendment retaliation law.

For a First Amendment retaliation claim "where the adverse action takes the form of an arrest and subsequent prosecution, the plaintiff must show an absence of probable cause."[87] "The presence of probable cause, therefore, is a bar to a First Amendment retaliation claim . . . ."[88] The only exception to this no-probable-cause requirement, the *Nieves* exception, is when "objective evidence [shows] that [s]he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been."[89] Accordingly, the question is whether Ms. Tanner satisfies the no-probable-cause requirement or qualifies under the *Nieves* exception.

### 1.    No-Probable-Cause Requirement

Plaintiff does not dispute that Officer Jenkins had probable cause for the underlying arrest. Instead, Plaintiff argues that Officer Jenkins *overcharged* her with felony domestic violence when probable cause only supported a lesser misdemeanor domestic violence charge.

---

[86] *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001).
[87] *Fenn v. City of Truth or Consequences*, 983 F.3d 1143, 1148–49 (10th Cir. 2020) (emphasis added) (*citing Hartman v. Moore*, 547 U.S. 250, 252, 265–66 (2006) (retaliatory prosecution); *Nieves v. Bartlett*, 587 U.S. 391, 405 (2019) (retaliatory arrest)).
[88] *Id.*
[89] *Nieves*, 587 U.S. at 406.

Plaintiff argues that probable cause must support every charge cited, not just sufficient probable cause to make the initial arrest. Thus, to overcome Officer Jenkins' qualified immunity defense, Plaintiff must prove the "[e]xisting law . . . [is] 'beyond debate'"[90] that (1) probable cause must be established for each cited charge and (2) probable cause did not exist for the felony charge.

Clearly established law generally "require[s] 'a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts.'"[91] For example, the Tenth Circuit found that the law was not clearly established where plaintiff "relie[d] almost exclusively on a Sixth Circuit decision and an unpublished district court decision."[92] Here, nearly identically, plaintiff relies on unpublished opinions from a single district court and another circuit to show that probable cause must be established for each cited charge.[93] These are plainly insufficient to clearly establish the law in the Tenth Circuit.[94]

Plaintiff also cites to two Tenth Circuit cases stating that a First Amendment retaliation claim can survive even when probable cause is present. Plaintiff argues these cases put the defendant on notice that, even in the Tenth Circuit, probable cause is not sufficient to defend against a First Amendment retaliation claim. But the cited portions of those cases are abrogated by more recent case law from the Supreme Court in *Nieves v. Bartlett* and from the Tenth Circuit in *Fenn v. City of Truth or Consequences*.

---

[90] *See Wesby*, 538 U.S. at 63 (*quoting Ashcroft*, 563 U.S. at 741).
[91] *Estate of Jensen v. Clyde*, 989 F.3d 848, 858 (10th Cir. 2021) (citation modified).
[92] *Estate of Jensen*, 989 F.3d at 858.
[93] Second Am. Compl. at 8–9 (*citing Nolan v. Dolton*, No. 10 CV 7357, 2011 WL 1548343, at *4 (N.D. Ill. Apr. 21, 2011); *Hagerdorn v. Cattani*, 715 F. App'x 499, 504 (6th Cir. 2017)).
[94] *See Estate of Jensen*, 989 F.3d at 858. Plaintiff also ignores an analogous Tenth Circuit case considering whether malicious prosecution claims are barred by probable cause for any charge or require probable cause for each charge separately. *Van De Weghe v. Chambers*, 569 F. App'x 617, 620 (10th Cir. 2014). There, the Tenth Circuit found that the court "hasn't definitely spoken to the question," noting that there was a split of authority on the issue and concluding that the plaintiff had failed to carry his burden. *Id.*

Plaintiff first cites to *DeLoach v. Bevers*, from 1990, where the Tenth Circuit held that a First Amendment claim for retaliatory arrest was not required to show that the officers lacked probable cause.[95] Then, Plaintiff cites to *Howards v. McLaughlin* from 2011, where the Tenth Circuit relied on *DeLoach* to hold it was clearly established that "an arrest made in retaliation of an individual's First Amendment rights is unlawful, even if the arrest is supported by probable cause."[96] But the Supreme Court reversed *Howards* on qualified immunity grounds, holding it was unclear whether a claim for retaliatory arrest required showing a lack of probable cause.[97]

And then, in 2019, the Supreme Court held in *Nieves* that probable cause "should generally defeat a retaliatory arrest claim."[98] The Court acknowledged that "[p]olice officers conduct approximately 29,000 arrests every day—a dangerous task that requires making quick decisions in 'circumstances that are tense, uncertain, and rapidly evolving.'"[99] Thus, "objective standards of reasonableness," rather than subjective intent, are the focus.[100] The Supreme Court concluded that "absent . . . a [no-probable-cause] showing, a retaliatory arrest claim fails."[101]

The Tenth Circuit post-*Nieves* has also unequivocally required a lack of probable cause for a First Amendment retaliation claim to advance. As the Tenth Circuit explained in *Fenn,* "where the adverse action takes the form of an arrest and subsequent prosecution, the plaintiff must show an absence of probable cause."[102] "The presence of probable cause, therefore, is a bar

---

[95] *DeLoach v. Bevers*, 922 F.2d 618, 620 (10th Cir. 1990).
[96] *Howards v. McLaughlin,* 634 F.3d 1131, 1148 (10th Cir. 2011).
[97] *Reichle v. Howards*, 566 U.S. 658 (2012).
[98] *Nieves*, 587 U.S. at 406.
[99] *Id.* at 401–04 (*quoting Graham v. Connor*, 490 U.S. 386, 397 (1989)).
[100] *Id.*
[101] *Id.* at 404.
[102] *Fenn*, 983 F.3d at 1149 (*citing Hartman*, 547 U.S. at 252, 265–66 (2006) (retaliatory prosecution); *Nieves*, 587 U.S. at 405 (retaliatory arrest)).

to a First Amendment retaliation claim . . . ."[103] Thus, with the existing law, Plaintiff has not

shown that it is clearly established that *every* cited charge pursuant to an arrest must have

probable cause.

And even if it were clearly established that probable cause should be considered charge-

by-charge, Plaintiff must also show that there was no probable cause for the felony charge.

Probable cause exists if "facts and circumstances within the arresting officer's knowledge and of

which he or she has reasonably trustworthy information are sufficient to lead a prudent person to

believe that the arrestee has committed or is committing an offense."[104] "The question of

whether probable cause existed in the . . . factual record does not require proof beyond

reasonable doubt" or even evidence sufficient to make guilt more likely true than false.[105]

Instead, it requires a "fair probability"[106] of guilt amounting to something "more than a bare

suspicion."[107]

Under Utah law at the time of the arrest, felony domestic violence in the presence of a

child required that "the person: . . . intentionally causes serious bodily injury to a cohabitant or

uses a dangerous weapon, . . . or other means or force likely to produce death or serious bodily

injury against a cohabitant, in the presence of a child."[108] There is no dispute that Ms. Tanner's

---

[103] *Id.* Multiple Tenth Circuit cases post-2021 have since echoed that mandatory language: Either show a lack of probable cause or fit within the narrow *Nieves* exception. *See Frey v. Jackson*, 41 F.4th 1223, 1232 (2022); *Craft v. White*, 840 F. App'x 372, 378 (10th Cir. 2021); *Detreville v. Gurevich*, No. 24-1427, 2025 WL 1874587, at *5 (10th Cir. July 8, 2025).
[104] *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995).
[105] *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011).
[106] *Kaley v. United States*, 571 U.S. 320, 338 (2014).
[107] *Kerns*, 663 F.3d at 1188 (*citing United States v. Ludwig*, 641 F.3d 1243, 1252 (10th Cir. 2011)).
[108] Utah Code § 76-5-109.1(2), (3)(a) (2021).

daughter was present during the event in question and that Ms. Tanner and Mr. Tanner were cohabitants.

So the question is "whether a reasonable officer could have believed that probable cause existed to . . . arrest" and charge Ms. Tanner with felony domestic violence in the presence of a child.[109] Officer Jenkins interviewed all three witnesses, giving him the opportunity to assess credibility. Mr. Tanner and Ms. Tanner offered directly conflicting statements, each claiming that the other attempted to push them down the stairs.[110] Ms. Tanner's daughter suggested that it looked like Mr. Tanner was going to throw Ms. Tanner down the stairs.[111] The only reference in the audio recording to anyone allegedly trying to push anyone else down stairs is Mr. Tanner exclaiming "Joelle, you're really going to push me down the stairs?" followed by a "verbally aggressive" Ms. Tanner denying that she was and demanding Mr. Tanner move out of her way.[112] Having interviewed all three witnesses, none of whom were disinterested, a reasonable officer could have weighed the audio recording heavily and interpreted it as corroborating Mr. Tanner's version of events.[113]

Attempting to push a person down a set of stairs likely meets the requirements for felony domestic violence in the presence of a child. Ms. Tanner argues there was no evidence that she "used a deadly weapon, attempted to commit homicide, or caused him serious bodily harm."[114]

---

[109] *See Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1191 (10th Cir. 2007) (*citing Romero*, 45 F.3d at 1476)); *Hinkle v. Beckham Cnty. Bd. of Cnty Comm'rs*, 962 F.3d 1204, 1220 (10th Cir. 2020).
[110] Second Am. Compl. ¶¶ 74–80.
[111] *Id*. at ¶¶ 71, 75.
[112] Audio Recording at 1:53–2:05.
[113] To be sure, a reasonable officer need not have come to this conclusion. But the probable cause test does not require that all reasonable officers would have made the arrest, nor does it require that the court deem the arrest necessary. And on the claims in this case, it is the Plaintiff that bears the burden of showing the absence of probable cause.
[114] Opp'n at 5.

And because Officer Jenkins found no marks on Mr. Tanner, there "was no evidence" to support his citation.[115] But this argument ignores that using "other means or force likely to produce . . . serious bodily injury" also meets the standard. The use of force (a push) to knock someone down the stairs would likely produce serious bodily injury.[116] Nor does it matter that Mr. Tanner did not fall down the stairs or actually suffer serious bodily injury, only that a push down the stairs is *likely* to produce such a result.[117]

In short, Plaintiff has not met the no-probable-cause requirement because it is not clearly established that there must be probable cause for each charge cited and because she has not shown that Officer Jenkins lacked probable cause. However, there is a narrow exception to this rule, which the court discusses next.

### 2. *Nieves* Exception

In *Nieves*, the Supreme Court identified a "narrow qualification" to the no-probable-cause requirement when "objective evidence" shows that similarly situated people have not been arrested.[118] The Court illustrated its point with jaywalking, which is common but in most places rarely results in an arrest.[119] An individual "vocally complaining about police conduct" arrested for jaywalking would likely fit within the exception.[120] At the pleading stage, Plaintiff need only allege facts that, if true, would meet the objective evidence requirements under *Nieves*.[121]

---

[115] *Id*.

[116] *See State v. Finlayson*, 2014 UT App 282, ¶ 33 (Defendant "assaulted Wife with 'other means or force likely to produce death or serious bodily injury' when he forcefully threw Wife down the stairs.").

[117] *See id*. ("Notwithstanding the fact that Wife suffered only cuts and bruises from the fall, [Defendant]'s act of pushing Wife down the flight of stairs is sufficient to establish that Finlayson used force likely to produce death or serious bodily injury.").

[118] *Nieves*, 587 U.S. at 407.

[119] *Id*.

[120] *Id*.

[121] *See Frey*, 41 F.4th at 1234 ("Of course, at the pleading stage, Plaintiff need not prove his case, and we accept any concrete factual allegation as true.").

But Plaintiff's claim here is nothing like that. The Second Amended Complaint's allegations suggest that arrests for domestic violence are not rare. Officers had previously arrested and charged Mr. Tanner with felony domestic violence when called to the home. Plaintiff was told by Officer Jenkins upon arrest "something to the effect that someone *must* get arrested when there is a domestic call."[122] And legally, domestic violence is one of the rare Utah criminal statutes that *mandates* arrest under certain circumstances, such as when there is probable cause of continued violence.[123] All this supports the inverse of what is required for the narrow *Nieves* exception.

Plaintiff nevertheless argues that she sufficiently invoked the *Nieves* exception. First, Plaintiff points to her allegation that "officers will not arrest or cite an individual with felony domestic violence unless there is a basis to do so."[124] But that is a conclusory statement devoid of any factual enhancement. Second, Plaintiff's allegations of another officer's surprise at her arrest does not sufficiently suggest similar domestic violence arrests are rare, though it certainly shows disagreement with Officer Jenkins' probable cause decision. In any event, it does not remedy Plaintiff's lack of challenge to the probable cause for her underlying arrest.[125]

Plaintiff's own allegations suggest that arrests for domestic violence are not a rare occurrence, nor are reserved for individuals who make complaints about police officers or annoy

---

[122] Second Am. Compl. ¶ 96 (emphasis added). Plaintiff notes that this is incorrect, but that is not the issue here.
[123] *See* Utah Code § 77-36-2.2(2) (2021) (Mandating that "the officer shall arrest and take the alleged perpetrator into custody" if the officer has "probable cause to believe that there will be continued violence against the alleged victim[.]").
[124] Second Am. Compl. ¶ 148.
[125] Plaintiff also argues that there was "false documentation of a felony arrest." Opp'n 9. This is a repackaging of the argument that probable cause was lacking for a felony domestic violence charge, which was addressed earlier. Plaintiff does not identify false facts in the arrest documentation but instead argues that they do not support a felony charge.

police officers with frequent calls. And Plaintiff, who holds the burden, alleges no "objective evidence" that would prove "similarly situated individuals" have routinely been allowed to go without arrest. Thus, Plaintiff fails to meet the standard required for the *Nieves* exception.[126]

Therefore, because Plaintiff has not met the no-probable-cause requirement nor the *Nieves* exception, Plaintiff has failed to overcome Officer Jenkins' qualified immunity on this claim.

### 3.    Arguable Probable Cause

The court also considers whether Officer Jenkins had arguable probable cause for the arrest and the felony charge. The Tenth Circuit recently held in a First Amendment retaliation case that "when probable cause is lacking at prong one, arguable probable cause for an arrest entitles a defendant to qualified immunity" under the clearly established law prong.[127] The Tenth Circuit observed that all other circuits to consider the question have held the same.[128]

"Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists."[129] The "protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."[130] Thus, "[i]n the § 1983 qualified-immunity context, an officer may be mistaken about whether he

---

[126] *See Nieves*, 587 U.S. at 407.

[127] *Detreville v. Gurevich*, No. 24-1427, 2025 WL 1874587, at *6 (10th Cir. July 8, 2025).

[128] *See Id.* ("the circuits that have addressed the issue have granted officers qualified immunity on a [First Amendment] retaliatory arrest claim when they had arguable probable cause for the arrest. *See Somers v. Devine*, 132 F.4th 689, 696-97 (4th Cir. 2025); *Roy v. City of Monroe*, 950 F.3d 245 (5th Cir. 2020); *Novak v. City of Parma*, 33 F.4th 296, 305 (6th Cir. 2022); *Just v. City of St. Louis*, 7 F.4th 761, 768-69 (8th Cir. 2021); *Redd v. City of Enterprise*, 140 F.3d 1378, 1383 (11th Cir. 1998); *see also Rupp v. City of Buffalo*, 91 F.4th 623, 642-43 (2d Cir. 2024).")).

[129] *Jordan v. Jenkins*, 73 F.4th 1162, 1170 (10th Cir. 2023) (*quoting Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014)).

[130] *Deutsch v. Jordan*, 618 F.3d 1093, 1098 (10th Cir. 2010) (quoting *Pearson*, 555 U.S. at 231).

possesses actual probable cause to effect an arrest, so long as the officer's mistake is reasonable."[131] Arguable probable cause requires only that a reasonable police officer "*could have reasonably believed that probable cause existed.*"[132]

As fully considered above, all three witnesses gave conflicting statements to Officer Jenkins, but a reviewing officer could have interpreted the audio recording as evidence that Ms. Tanner was the one who attempted to push Mr. Tanner down the stairs. As noted earlier, both the allegations of the Second Amended Complaint and a review of the audio recording suggest Ms. Tanner was verbally aggressive. The only reference to stairs in the audio recording involves a dispute over whether Ms. Tanner is attempting to push Mr. Tanner down the stairs. The recording also could be seen to generally undermine Ms. Tanner's position that Mr. Tanner was the aggressor. In short, a reasonable officer "*could* have reasonably believed that probable cause existed."[133] And regardless of whether Officer Jenkins made a mistake of fact (who did the pushing) or a mistake of law (whether attempting to push someone down a flight of stairs is sufficient for a felony citation), the alleged mistake would be a reasonable one under the circumstances.[134] Thus, Officer Jenkins is also entitled to qualified immunity on this claim since he had, at the least, arguable probable cause.

---

[131] *A.M. v. Holmes*, 830 F.3d 1123, 1140 (10th Cir. 2016) (emphasis omitted).
[132] *Felders v. Malcom*, 755 F.3d 870, 879 (10th Cir. 2014) (*quoting Fleming v. Livingston Cnty.*, 674 F.3d 874, 880 (7th Cir. 2012)) (emphasis in original).
[133] *See Felders*, 755 F.3d at 879.
[134] *See Deutsch*, 618 F.3d at 1140 (The "protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.").

### B.    Malicious prosecution

Ms. Tanner also asserts that Officer Jenkins committed malicious prosecution by overcharging her with a felony rather than with a misdemeanor.[135] Ms. Tanner must thus show that Officer Jenkins violated clearly established malicious prosecution law.

A § 1983 malicious prosecution claim requires showing that: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages."[136] Thus, generally, probable cause defeats a malicious prosecution claim.[137] Indeed, even arguable probable cause defeats a malicious prosecution claim with a qualified immunity defense.[138] And as discussed above, Ms. Tanner did not show a lack of probable cause and Officer Jenkins at least had arguable probable cause for the felony charge.[139]

But the court considers Plaintiff's claim in full. Plaintiff again does not challenge the presence of probable cause for the underlying arrest but instead asserts that there was no probable cause to *overcharge* Ms. Tanner with felony domestic violence. Plaintiff argues malicious prosecution claims should be analyzed separately for each charge and, without probable cause for the felony charge, the malicious prosecution claim can continue. But again,

---

[135] Ms. Tanner, in both her complaint and her opposition, combines her malicious prosecution and abuse of process claims and moves between the two repeatedly as if they are identical. But these claims have different legal requirements, and thus the court considers them separately.

[136] *Novitsky v. Aurora*, 491 F.3d 1244, 1258 (10th Cir. 2007).

[137] *Id.*

[138] *Detreville*, 2025 WL 1874587, at *7 ("If probable cause is lacking [for a malicious prosecution claim], 'we then must determine whether [the plaintiff]'s rights were clearly established, which we approach by asking whether the officers arguably had probable cause.' *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012).").

[139] Of course, "an evaluation of whether there was arguable probable cause on the malicious prosecution claim may not be limited" to facts surrounding the initial arrest. *Id.* at *7. Here, Plaintiff offers no meaningful distinction that would change the analysis.

up against a qualified immunity defense, Plaintiff must prove that the "[e]xisting law . . . [is] 'beyond debate'" that probable cause must be established for each cited charge.[140]

Plaintiff supports her argument by citing to *Miller v. Spiers*, a Tenth Circuit case that held a conviction on one charge did not foreclose malicious prosecution claims on dismissed charges.[141] But while *Miller* is itself clear, it is an unpublished case and was later seemingly questioned by the Tenth Circuit in *Van De Weghe v. Chambers*.[142]

The Tenth Circuit in *Van De Weghe* considered nearly the same question as in *Miller*—whether probable cause for one charge precludes malicious prosecution claims for all charges—yet determined that qualified immunity should apply because the law was not sufficiently clear.[143] The court recognized a circuit split between the Third Circuit and the Seventh and Second Circuits over the question, while also finding that *Miller* "seem[s] to have assumed" analyzing charge-by-charge was the correct way "without acknowledging or considering the split of authority."[144] The court, declining to take a side, held that qualified immunity applied because "in these circumstances—without a binding opinion from the Supreme Court, with uncertain signals in this court, and with other courts unmistakably divided—it becomes difficult . . . [to clear] the 'clearly established law' hurdle."[145]

---

[140] *See Wesby*, 538 U.S. at 63 (quoting *Ashcroft*, 563 U.S. at 741).

[141] *Miller v. Spiers*, 339 F. App'x 862, 868 (10th Cir. 2009).

[142] *Van De Weghe*, 569 Fed. App'x at 620. Some district courts to consider the question have also found that *Mocek* from the Tenth Circuit further muddies the waters. *See infra* at n.146. There, the Tenth Circuit held that New Mexico's combination tort for malicious abuse of process required the plaintiff to prove the criminal complaint lacked probable cause "as a whole." *Mocek v. City of Albuquerque*, 813 F.3d 912, 936 (10th Cir. 2015). Because one of the four misdemeanors was supported by probable cause, the claim failed. *Id.* That said, the application of this case is unclear because it considered a different tort under different state law and all the charges were misdemeanors. On the other hand, it is the only binding opinion from the Tenth Circuit, and it suggests considering whether probable cause was present "as a whole" rather than charge-by-charge.

[143] *Van De Weghe*, 569 Fed. App'x at 620.

[144] *Id.*

[145] *Id.*

Since then, district courts within the Tenth Circuit have gone different directions on whether malicious prosecution allows a plaintiff to challenge prosecutions on a charge-by-charge basis, muddying the waters even further.[146] It is hard to see how the law is "beyond debate" when the judges within the circuit disagree.[147] But regardless, even if the district courts were unanimous in allowing charge-by-charge consideration, district court decisions generally are insufficient to clearly establish the law.

Given the differing outcomes in *Miller* and *Van De Weghe*, plus the differing views in the district courts, Plaintiff has not shown that the law Officer Jenkins allegedly violated is clearly established. And "[t]he failure to carry that burden is fatal to h[er] claim."[148]

All in all, Officer Jenkins is entitled to qualified immunity on this claim because (1) Ms. Tanner has not shown a lack of probable cause supporting her felony charge; (2) at the very least, Officer Jenkins had arguable probable cause to charge Ms. Tanner with a felony; and (3) it is not clearly established in the Tenth Circuit that malicious prosecution claims should be considered charge-by-charge.

---

[146] *See Craft v. Wright*, 426 F. Supp. 3d 978, 999–1000 (D. N.M. 2019) (distinguishing *Van De Wegh* and *Mocek* to follow *Miller* and determining that the law allowing a charge-by-charge consideration was clearly established) (rev'd on different grounds); *Stewart v. Boulder*, No. 19-cv-01588, 2020 WL 6119530, at *9 (D. Colo. Mar. 5, 2020) (following *Miller* with no discussion of contradicting cases); *Santistevan v. Stegink*, No. 15-cv-00198, 2016 WL 1388018, at *9 (D. Colo. Apr. 8, 2016) (same); *Montoya v. Denver*, No. 16-cv-01457, 2021 WL 1244264, at *19 & n.15 (D. Colo. Mar. 4, 2021) (same); *Montgomery v. Chernak*, No. 18-cv-00217, 2019 WL 979071, at *13 (D. Colo. Feb. 28, 2019) (finding qualified immunity applied because there is no clearly established law in the Tenth Circuit); *Shaw v. Glashauckus*, No. 19-cv-1063, 2020 WL 4674146, at *6 (D.N.M. Aug. 12, 2020) (same); *see also Heaney v. Costigan*, No. 09-cv-01006, 2011 WL 4368837, at *5 (D. Colo. Sep. 16, 2011) (following *Miller* with no discussion of potential contradictions).

[147] *See, e.g., Van De Weghe*, 569 Fed. App'x at 620 ("in these circumstances—without a binding opinion from the Supreme Court, with uncertain signals in this court, and *with other courts unmistakably divided*—it becomes difficult . . . [to clear] the 'clearly established' law' hurdle.") (emphasis added); *Wilson v. Layne,* 526 U.S. 603, 618 (1999) ("If judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy.").

[148] *Van De Weghe*, 569 F. App'x at 620 ("[Plaintiff] hasn't borne his burden of demonstrating that the law is clear that an individual may pursue a claim for malicious prosecution when at least *some* of the charges against him *were* supported by probable cause. The failure to carry that burden is fatal to his claim.").

### C.    Abuse of Process Claim

Plaintiff also asserts an abuse of process claim. Under Utah law, an abuse of process claim differs from a malicious prosecution claim: Abuse of process "applies to 'one who uses a legal process . . . against another primarily to accomplish a purpose for which it is not designed'" while malicious prosecution concerns instituting or maintaining proceedings for an improper purpose.[149] Abuse of process claims require showing "(1) an ulterior purpose in bringing the suit, and (2) a wilful act in the use of the process not proper in the regular conduct of the proceedings."[150] "To satisfy the 'wilful act' requirement, a party must point to conduct *independent of legal process itself* that corroborates the alleged improper purpose."[151] "Legal process with a bad motive is not enough. A party must allege 'a corroborating act of a nature other than legal process.'"[152]

Here, Plaintiff has not alleged any corroborating acts showing Officer Jenkins sought to abuse the legal process for his own gain. Plaintiff points only to the charge for felony domestic violence, but the underlying filing is not enough for an abuse of process claim.[153] She does not allege a "corroborating act."[154] It also is insufficient to allege that the filing's purpose was to deter further 911 calls. "Legal process with a bad motive is not enough[,]"[155] but that is all Plaintiff alleges here.

---

[149] *Anderson Dev. Co. v. Tobias*, 2005 UT 36, ¶ 63; *see also Wolford v. Lasater*, 78 F.3d 484, 490 (10th Cir. 1996) ("the latter [malicious prosecution] is concerned with maliciously causing process to issue, while the former [abuse of process] is concerned with the improper use of process after it has been issued.").
[150] *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1103 (10th Cir. 2009).
[151] *Hatch v. Davis*, 2006 UT 44, ¶ 39 (emphasis added) (citation omitted); *see also Eskamani v. Auto-Owners*, 2020 UT App 137, ¶ 34.
[152] *Segment Consulting Mgmt., LTD v. Streamline Mfg., LLC*, No. 2:19-CV-933, 2020 WL 907154, at *3 (D. Utah Feb. 25, 2020) (quoting *Hatch*, 2006 UT 44, ¶ 39).
[153] *See Frazier v. Eagle Air*, No. 2:22-CV-00300, 2024 WL 3961808, at *4 (D. Utah Aug 27, 2024).
[154] *See Segment*, 2020 WL 907154, at *3 (quoting *Hatch*, 2006 UT 44, ¶ 39).
[155] *Segment*, 2020 WL 907154, at *3.

Therefore, Plaintiff's abuse of process claim fails because Officer Jenkins did not violate Ms. Tanner's clearly established rights against abuse of process. Officer Jenkins is entitled to qualified immunity on this claim.

### III.    Dismissal with Prejudice

Lastly, the court considers whether to dismiss the complaint with or without prejudice. "A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile."[156] Courts have also taken into account when Plaintiff has made multiple attempts to amend the complaint to survive a motion to dismiss and when complaints change little amendment to amendment.[157] Further, qualified immunity is designed to "protect[] public employees from both liability and 'from the burdens of litigation' arising from the exercise of discretion."[158]

Here, this is Ms. Tanner's third attempt to state a claim. Almost no factual allegations were different between the second amended complaint and the first amended complaint. Officer Jenkins' successful qualified immunity defense should protect him "'from the burdens of litigation' arising from the exercise of discretion."[159] Allowing a fourth complaint would not meet that purpose of qualified immunity. And in the end, Ms. Tanner's claims that Officer Jenkins overcharged her with a felony, instead of just with a misdemeanor, does not violate clearly established law in the Tenth Circuit. Further amendments would be futile because they

---

[156] *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

[157] *Matthews v. LaBarge, Inc.*, 407 Fed. App'x. 277, 280 (10th Cir. 2011) (not abuse of discretion to refuse third amended complaint when differences were immaterial); *Golod v. Bank of America*, 403 Fed. App'x. 699, 702 (3d Cir. 2010) (amendment futile after several failures by plaintiff to move complaint across line from conceivable to plausible); *Holmes v. Gates*, 403 Fed. App'x. 670, 673 (3d Cir. 2010) (complaint properly dismissed with prejudice after plaintiff failed three times to include facts beyond conclusory allegations).

[158] *Cummings*, 913 F.3d at 1239 (quoting *Allstate Sweeping*, 706 F.3d at 1266).

[159] *See id.*

cannot change the clearly established law at the time of the arrest. Thus, the court will dismiss with prejudice.

**ORDER**

Defendant's motion to dismiss, ECF No. 80, is GRANTED and the Second Amended Complaint, ECF No. 77, is DISMISSED with PREJUDICE.

Signed September 8, 2025.

BY THE COURT

David Barlow
United States District Judge